TOM REED *v.* COMPENSATION COMMISSIONER *et al.*

(No. 9275)

Submitted January 20, 1942.  Decided February 17, 1942.

*Goodykoontz, Slaven & Kopp,* for appellants.
*J. Brooks Lawson,* for appellee.

Rose, Judge:

This appeal was awarded on the petition of Red Jacket Coal Corporation from an order of the Workmen's Compensation Appeal Board, by which the Workmen's Compensation Commissioner was directed to allow Tom Reed, a former employee of the appellant, compensation for life as for total permanent disability.

The claimant, Tom Reed, on August 19, 1936, while employed by the appellant in its mine in Mingo County, was injured by a slate fall. The injury was reported by the employer as a fracture of the left femur and a crushing of the right foot, in addition to which Reed, in his application for compensation, claimed the fracture of three ribs.

Reed was immediately hospitalized at Williamson and awarded temporary total disability compensation, which continued for 78 weeks. During this time, three efforts were made to reduce the fracture of the femur. The first treatment involved the application of weights to the foot, and a cast, but no union resulted. The second effort was a surgical operation for holding the broken ends of the bone together. This, also was unsuccessful. A second operative attempt at reducing the fracture resulted in a fragile union of the broken bones; a substantial outward angulation of the left femur; a shortening of the left leg about 3½ inches; internal rotation of left foot and knee,

with a marked loss of action in the knee and ankle joints.

At the expiration of the 78 weeks period, upon examinations and reports of Drs. Conley and Easley of Williamson, an award on the basis of 50% total permanent disability was made under date of March 23, 1939. Of this rating, 45% was based on the injury to the left leg, and 5% on the injury to the right foot. This award was for 200 weeks and totalled $3200.00, from which was deducted $1248.000 previously paid under the temporary allowance. The last installment of said award became due June 19, 1940. No objection or protest was made by the claimant to this award, and the installments were paid and accepted in regular course. Shortly after the last payment of this first award, the claimant, by counsel requested a re-examination, making claim for an additional 10% of disability. A report made by the medical examiners of the commissioner led him, on October 19, 1940, to make an additional award of 5%, which was to date as from the expiration of the last payment of the first award. The final payment of this last award became due November 6, 1940. No objection, exception, protest or appeal was made to this second award, but immediately after the last payment thereunder, the claimant and his attorney requested a further examination and hearing. At this time the contention was advanced for the first time that Reed was, and had been, from the date of his injury, totally and permanently disabled. On December 9, 1940, the commissioner declined to reopen the case, or grant the hearing asked for, and this disposition of the case was, on appeal, affirmed by the Workmen's Compensation Appeal Board on the 22nd day of February, 1941.

There then ensued a number of letters from the claimant and his attorney asking for still another hearing, the applications being supported by letters from two doctors and certain photographs purporting to show the claimant's then condition. Under date of April 16, 1941, the commissioner again held that the showing made by the claimant was not sufficient to justify a reopening of the case for any purpose, whereupon a second appeal was

taken to the Workmen's Compensation Appeal Board, resulting in the order now under review.

The pertinent part of the order then made is as follows:

> "Upon consideration of all which this Board finds, as a matter of fact, that the claimant was totally and permanently disabled from performing any work at the time of his injuries and has continued to be so. It is therefore adjudged, ordered and decreed that the order of the Compensation Commissioner as of the 16th day of April, 1941, be annulled, set aside and held for naught. That it is the order of the majority of this Board, that this case be remanded to the Commissioner with direction to pay the claimant for a 100% total permanent disability for the rest of his natural life.
>
> Mr. Posten respectfully dissents from the majority opinion, for the reason that the claimant has not complied with the provisions of the statute, in such cases made and provided."

It must at once appear that so much of this order as summarily directed the commissioner to pay the claimant for 100% total permanent disability cannot be sustained. There was nothing before the board except the single question whether the case should be reopened.

As to the merits of the claimant's request for a reopening of his case, it will be noted that he was apparently completely satisfied with the award of March 23, 1939. He made no objection thereto and, of course, took no appeal. This adjudication, therefore, fixed definitely for the purposes of this proceeding the degree of claimant's disability at that time. *Pauley* v. *Commissioner*, 111 W. Va. 456, 162 S. E. 891; *Burdette* v. *Commissioner*, 111 W. Va. 299, 161 S. E. 556; *Enyart* v. *Commissioner*, 109 W. Va. 613, 155 S. E. 913. It was permissible, however, for the claimant to show, within one year after the last payment of that award, that subsequent to said award, there had been an aggravation or progression of his disability, or to present a new claim growing out of the injuries based on facts which had not been taken into consideration on the former award. *Spence* v. *Commissioner*, 110 W. Va. 162, 157 S. E.

164; *Enyart v. Commissioner,* 109 W. Va. 613, 155 S. E. 913. Such a claim was made promptly; but, at that time, his counsel asserted, not that he was totally and permanently disabled, but only that he was entitled to the rating of an additional 10% disability. On a hearing, he was awarded actually an increase of 5% in his rating. This award was made October 19, 1940. Again, there was no appeal, objection or protest of any kind. This order of October 19, 1940, thus determined conclusively, that, with all aggravation and progression, the claimant's aggregate disability on October 19, 1940, was only 55% of total. We are, therefore, concerned only with the question whether the showing subsequently made by the claimant indicated that there had been an aggravation or progression of the claimant's injuries after October 19, 1940, or whether there were present substantial additional facts relating thereto not theretofore considered by the commissioner which would justify the reopening of the case.

The original award was based on the reports in considerable detail, showing the claimant's then condition, by Doctors Easley and Conley, by whom he had been treated in the hospital. One said: "I doubt seriously if he will ever be able to walk without crutches," and the other that claimant was "unable to do manual labor," but was in "good physical condition." The case was reopened for hearing, following receipt of a letter from Dr. B. J. Read, the company doctor who first examined and treated the claimant; and upon reports of two physicians who were directed by the commissioner to make examination of claimant. Dr. Read stated that the claimant's condition was then the same as formerly reported by Doctors Easley and Conley; that the claimant would be better off with the leg amputated; and that he was unable to perform manual labor. The examining doctors of the commissioner reported the leg practically useless with a running sinus at the point of injury. These reports show the condition of the claimant's injury at the time of the last award of October 19, 1940.

The only medical evidence produced by the claimant

subsequent to the last payment of the award of October 19, 1940, consisted of letters from two physicians, neither of whom gave any particulars showing a change in claimant's condition. One of these stated that Reed was "unable to do any type of ordinary physical labor," and the other that he was "totally incapacitated insofar as performing manual labor is concerned." A number of snapshots or photographs were filed purporting to show the condition of the claimant's injury. It is at once apparent that the condition of the claimant at the time of his applications for rehearing in December, 1940, and April, 1941, respectively, was not shown to be in the least changed from that at the time the award was made on October 19, 1940, and that no new fact or facts not theretofore considered by the commissioner were presented. Indeed the claimant, in his own letters, and his counsel, in all his communications to the commissioner, after the second award, base the claim, not on any pretense of aggravation or progression of the injury or upon the discovery of any new material facts, but solely on the contention that Reed was totally and permanently disabled from the beginning. Obviously, the demand was that the whole case be reheard *de novo*. This, of course, was impossible. The very statement by the applicant and his counsel that he had been totally and permanently disabled from the date of his injury implies necessarily that his present condition is not one of aggravation or progression.

We have long held that a reopening of a closed case cannot be had except on a showing of aggravation or progression or of material facts not considered by the commissioner at the hearing on which the final award was made. *Bell* v. *Commissioner*, 113 W. Va. 571, 169 S. E. 162; *Myers* v. *Commissioner*, 113 W. Va. 316, 167 S. E. 740; *Burdette* v. *Commissioner*, 111 W. Va. 299, 161 S. E. 556; *Watkins* v. *Commissioner*, 111 W. Va. 126, 161 S. E. 20; *Nichols* v. *Commissioner*, 111 W. Va. 34, 160 S. E. 854. By sub-section 1-b, article 5, chapter 137 of the Acts of 1939, this uniform holding of our Court was embodied in a statutory enactment as follows:

"If, however, in any case in which application for further adjustment of a claim is filed under the next preceding section, it shall appear to the commissioner that such application fails to disclose a progression or aggravation in the claimant's condition, or some other fact or facts which were not theretofore considered by the commissioner in his former findings, and which would entitle such claimant to greater benefits than he has already received, the commissioner shall, within sixty days from the receipt of such application, notify the claimant and the employer that such application fails to establish a prima facie cause for reopening the claim."

Since this act became effective, this Court has specifically held in the case of *Mason* v. *Workmen's Compensation Appeal Board,* 121 W. Va. 444, 4 S. E. 2d 791, as follows:

"After a final award of compensation, it does not constitute error for the Commissioner to decline to reopen the case on motion of the claimant on the ground of aggravation of injury, unless there is a *prima facie* showing of an aggravated condition of injury following the last award."

Both this decision and this act of the legislature antedate the commissioner's award in this case on October 19, 1940, and, therefore, are controlling on the question of the showing necessary to be made in the subsequent applications of the claimant herein. We are of opinion that such a showing does not appear in this record.

The order of the Workmen's Compensation Appeal Board here reviewed is therefore reversed, and the proceeding is remanded to the appeal board with directions to proceed further therein in accordance with the principles announced in this opinion.

*Reversed and remanded.*